IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BASILIO NIEVES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | No. EP-12-CV-069-RFC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 1383(c)(3).  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas.  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

On August 14, 2010, Plaintiff filed his application for DIB, alleging disability due to impairments that became disabling on May 30, 2009.  (R:116-118)[1]  The application was denied initially and on reconsideration.   (R:57-60, 65-67)    Pursuant to Plaintiff's request, an

---

[1]  Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(R:[page number(s)])".

Administrative Law Judge (ALJ) held a hearing to review Plaintiff's application *de novo* on July 7, 2011, at which Plaintiff testified, represented by an attorney, and vocational expert testimony was propounded.  (R:34-54)  The ALJ issued her decision on July 27, 2011, denying benefits. (R:18-29)  Plaintiff's request for review was denied by the Appeals Council on December 16, 2011. (R:6-11) Plaintiff was granted an extension of time to file his appeal in this Court.  (R:1-5)

On February 29, 2012, Plaintiff submitted his complaint.  (Doc. 1) The Commissioner filed an answer and transcript of the administrative proceedings on May 8, 2012.  (Docs. 11, 13) On June 25, 2012, Plaintiff's brief was filed.  (Doc. 17)  On July 19, 2012, the Commissioner filed his brief in support of the decision to deny benefits.  (Doc. 18)

## ISSUES

Plaintiff presents two grounds for reversal or remand:

(1)     Whether Plaintiff's lumbar spine impairment meets the requirements of Listing 1.04A of the Regulations; and

(2)     Whether the ALJ failed to incorporate all of Plaintiff's limitations in the hypothetical question to the vocational expert.

(Doc. 17:2)

## DISCUSSION

### I.     *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994), *cert. denied*, 514 U.S. 1120 (1995).  Substantial evidence is more than a scintilla, but can

be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  A finding

of no substantial evidence will be made only where there is a conspicuous absence of credible

choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)

(citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In reviewing the substantiality of

the evidence, a court must consider the record as a whole and must take into account whatever in

the record fairly detracts from its weight.  *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir.

1986).

  If the Commissioner's findings are supported by substantial evidence, they are

conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.  In applying the substantial evidence

standard, a court must carefully examine the entire record, but may not reweigh the evidence or

try the issues *de novo*.  *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989).  It may not

substitute its own judgment even if the evidence preponderates against the [Commissioner's]

decision, because substantial evidence is less than a preponderance.  *Harrell v. Bowen*, 862 F.2d

471, 475 (5th Cir. 1988).  Conflicts in the evidence are for the Commissioner, and not the courts,

to resolve.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**II.**  ***Evaluation Process***

  Disability is defined as the "inability to engage in substantial gainful activity by reason of

any medically determinable physical or mental impairment which. . . has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's residual functional capacity (RFC) is what he can still do despite his limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

**III.    *The ALJ's Hearing Decision***

First, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since May 30, 2009. (R:20) At the second step, the ALJ, applying the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with L4-5 herniation and left sciatic nerve impingement, gout, obstructive sleep apnea, posttraumatic stress disorder, and generalized

4

anxiety disorder. (*Id*.)  The ALJ also found that Plaintiff's hypertension was not a severe impairment. (*Id*.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. (R:21-22) She specifically considered Listing 1.02 for major dysfunction of a joint, Listing 1.04A for disorders of the spine, Listing 3.10 for sleep-related breathing disorders, and Listing 12.06 with respect to mental disorders. (*Id*.)

The ALJ determined that Plaintiff has the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a), with the exception that Plaintiff cannot kneel, squat, crouch, crawl, or climb stairs, ramps, ladders, ropes, and scaffolds and can only occasionally bend and stoop. (R:22-28) Plaintiff can understand, remember, and carry out simple, but not complex or detailed instructions and use judgment to make simple, work-related decisions. (*Id*.)

At the fourth step, the ALJ found that Plaintiff is capable of performing his past relevant work as a customer service representative/telephone solicitor, both as actually and generally performed. (R:28)

The ALJ made a step-five finding, in the alternative, that there were also other jobs existing in the national economy that Plaintiff is able to perform. (R:28-29)

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 30, 2009, through the date of the decision. (R:29)

**IV.      Whether Plaintiff's lumbar spine impairment meets the requirements of Listing 1.04A of the Regulations**

Plaintiff claims that the ALJ failed to discuss at step three the evidence offered in support

of Plaintiff's claim for disability and to explain why she found Plaintiff's impairments did not

meet or equal the Listing 1.04A, as required by 42 U.S.C. § 405(b)(1) and *Audler v. Astrue*, 501

F.3d 446, 448 (5th Cir. 2007).  (Doc. 17:3-4)  Plaintiff contends that the ALJ should have done

more than state the requirements of the Listing, and he points to evidence in the record that he

claims supports a finding that Plaintiff's impairment met all the criteria of Listing 1.04A.  (Doc.

17:4-7)   The Commissioner contends that the ALJ's explanation that the necessary clinical

findings were not present was sufficient, and if insufficient was harmless error, and cites to

evidence in the record that supports the ALJ's determination.  (Doc. 18:3-5)

In *Audler*, the Fifth Circuit found the ALJ's summary conclusion—that the medical

evidence indicated that Plaintiff's impairments, while severe, were not severe enough to meet or

medically equal any of the impairments listed in Appendix 1, Subpart P—was beyond

meaningful judicial review because the ALJ offered nothing to support her conclusion at step

three.  *Audler*, 501 F.3d at 448.  The Fifth Circuit, however, made clear that an exhaustive point-

by-point discussion is not always required.  *Id*.  Further, any error in failing to explain the

conclusion of non-disability at step three is subject to harmless error analysis.  *Id*.  The Court

found the error harmful in *Audler* because a diagnostic checklist indicated that Audler met the

criteria of a listing and there was no medical evidence to contradict such findings.  *Id*., at 449.

Thus, even when an ALJ fails to state a reason or reasons for an unfavorable determination at

step three, the Court must determine whether the ALJ's error was harmless under the

circumstances.  *See id.*  A procedural error is harmless so long as it does not affect the

substantial rights of a party.  *See id.*, at 448.  An ALJ's failure to set out a basis for his step-three

decision affects substantial rights when the claimant appears to have met the burden to

demonstrate that a Listing is met or equaled.  *Id.*

> With respect to the ALJ's consideration of Listing 1.04A at step three, the ALJ stated:
>
> Further, the claimant does not meet Listing 1.04A for disorders of the spine
> because the evidence of record does not demonstrate evidence of nerve root
> compression characterized by neuroanatomic distribution of pain, limitation of
> motion in the spine, motor loss (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory and reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test (sitting and
> supine).

(R:21)  There is no disagreement that this is the specific criteria for Listing 1.04A.  (Doc. 17:4;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A)   The introductory section to the listed

impairments of the musculoskeletal system, however, provides additional requirements, which

Plaintiff fails to address.  There must be "a detailed description of the . . . findings appropriate to

the specific impairment being evaluated [, which] must be determined on the basis of objective

observation during the examination and not simply a report of the individual's allegation."

Listing 1.00D.  The introductory section further directs:

> Alternative testing methods should be used to verify the abnormal findings; e.g., a
> seated straight-leg raising test in addition to a supine straight-leg raising test.
> Because abnormal physical findings may be intermittent, their presence over a
> period of time must be established by a record of ongoing management and
> evaluation.   Care must be taken to ascertain that the reported examination
> findings are consistent with the individual's daily activities.

7

*Id*. Specifically regarding examination of the spine, the regulations provide:

> Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss. However, a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs . . . [and] should be accompanied by measurement of the strength of the muscle(s) in question. . . .

Listing 1.00E(1). "Musculoskeletal impairments frequently improve with time or respond to treatment. Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment." Listing 1.00H(1).

The ALJ found that Plaintiff has severe degenerative disc disease of the lumbar spine with L4-5 herniation and left sciatic nerve impingement. (R:20) Plaintiff highlights two MRI results to further support that he met the initial requirement of Listing 1.04 that Plaintiff suffer from a disorder of the spine. (Doc. 17:4-5) A May 23, 2006, lumbar spine MRI showed moderate central disc protrusion/herniation at L4-5 with degenerative changes and mild degenerative changes at L5-S1 with minimal central disc protrusion. (R:199) An April 27, 2007, lumbar spine MRI showed moderate diffuse disc bulge at L5-S1 with bilateral mild narrowing of the neural foramina and mild diffuse disc bulge at L4-5. (R:218)

### 1. Nerve root compression

Plaintiff contends that there is evidence that Plaintiff's impairments result in nerve root compression. (Doc. 17:5) He points to an April 6, 2007, medical report regarding x-rays showing narrowing at L4-S1 (R:244), an April 27, 2007, MRI of Plaintiff's lumbar spine showing bilateral neural foramina narrowing at L5-S1 (R:218), and a May 31, 2007, report of

imaging results stating "L4-S1 ddd with [L4-5] [high intensity zone] and left subarticular recess stenosis with disc protrusion at [L4-5] and [L5-S1]." (R:238)   Plaintiff argues that "neural foramina narrowing" is also referred to as "spinal stenosis" both of which involve narrowing of spaces in the spine that results in pressure on the spinal cord and or nerve roots.  (Doc. 17:5, citing Spinal Stenosis, available at http://www.niams.nih.gov/health_info/spinal_stenosis/default.asp (June 25, 2012).   Plaintiff's source, however, distinguishes between a narrowing that places pressure on the nerve roots and a narrowed space pushing on a nerve root.  *See id.*  With respect to narrowing or stenosis, whether it be subarticular recess stenosis, spinal canal stenosis, or foraminal stenosis, a rating of mild signifies that the nerve root has ample surrounding cerebrospinal fluid (CSF) without displacement or compression of the nerve root.  Harry N. Herkowitz, M.D., International Society for the Study of the Lumbar Spine, The Lumbar Spine, 478-79 (Lippincott Williams & Wilkins, 2004).  A rating of moderate indicates that there *may* be mild compression of the nerve root; a severe rating signifies that there is no visible CSF around the nerve root and there is at least moderate compression of the nerve root.  *Id*.  The April 27, 2007, MRI reflected only  mild narrowing of the neural foramina bilaterally at the L5-S1 level.  (R:218, 404) None of the records reflect moderate or severe narrowing.   Thus, it appears that the evidence in the administrative record fell short of providing evidence of nerve root compression.

The Commissioner argues that the radiographic evidence of narrowing in the lumbar spine from May 2006 and April 2007, on which Plaintiff relies, were from approximately two years before Plaintiff's alleged onset date of May 30, 2009, a fact the ALJ also noted.  (Doc.

18:5; R:26, 218, 238, 244)   A review of the record reflects that there were no more recent medical records containing MRIs of Plaintiff's back.   The last record to thoroughly address Plaintiff's back pain was a medical evaluation report dated January 11, 2008.  (R:375-376)  In August 2008, during a routine check up, medication review, and lab results visit, Plaintiff did complain of low back pain of 7/10.  (R:616)  He answered that he was not currently under treatment for his back pain, the record notes that he arrived ambulatory without assistance, and the treatment plan was that Plaintiff rest; no examination of his spine was performed, so there is no indication of his strength, his range of motion, or results of a straight leg raising test.  *See id.* In later records, Plaintiff's back pain is referred to only in his medical history or current diagnosed problems (e.g., R:577, 597, 603, 607, 615, ) or as his reasoning for not exercising (R:587).   During his consultative examination with Dr. Onyema Amakiri in September 2010, Plaintiff complained of knee pain, sleep apnea, and hypertension, but not back pain, and no MRI was conducted at or around that time. (R:643-646)  There is no record of ongoing management or evaluation to show that Plaintiff's impairment met any of the Listing 1.04A criteria during the relevant time period, and thus no evidence in the record that Plaintiff's stenosis had become moderate or severe by his alleged onset date of May 30, 2009, or anytime thereafter.  Although failure to satisfy this criterion alone renders any error in the ALJ's failure to more fully articulate the reasons for her determination harmless, the Court will address the other Listing 1.04A criteria as well.  The absence of an ongoing record of management and treatment, however, also proves fatal for each of the remaining criterion, as discussed below.

> 2.     *Neuroanatomic Pain Distribution*

Plaintiff contends that the record evidence also reflects that Plaintiff suffers from neuro-anatomic pain distribution.   (Doc. 17:5)   Multiple medical records indicate that Plaintiff complained of lower back pain radiating down the back of his left leg and numbness in his left leg.  (R:238, 244, 246, 254, 263, 401)  On September 12, 2007, Plaintiff was assessed with lumbar radiculitis.  (R:403)  On June 24, 2008, Plaintiff was assessed with chronic back pain with radiculopathy.  (R:634)  The pain distribution described appears to be what would be expected when a nerve at the L5/S1 level is irritated.  Again, however, there is scant evidence of the distribution of any pain radiating from Plaintiff's back around his alleged onset date through the date of the Commissioner's decision.

> 3.     *Limitation of Spinal Motion*

Plaintiff asserts the evidence also reflects limitations in Plaintiff's spinal motion.  (Doc. 17:6)  An August 2007 record noted that Plaintiff's lumbosacral motion was abnormal and his range of motion was limited due to pain.  (R:228)  On October 17, 2007, Plaintiff experienced decreased range of motion due to pain.  (R:382)  On January 11, 2008, Plaintiff had limited thoracolumbar range of motion, specifically: "Flexion is active at 55 degrees, passive at 60 degrees with pain elicited at 55 degrees; Extension is active and passive at 21 degrees with pain elicited at 21 degrees... Right rotation is active and passive at 14 degrees with pain elicited at 14 degrees; Left rotation is active and passive at 15 degrees with pain elicited at 15 degrees." (R:376)

The Commissioner highlights the physical examination report of Dr. Amakiri on September 20, 2010. (Doc. 18:4; R:27) That report did not reflect back pain or limitations due to spinal abnormalities in his reported medical conditions. (R:643-644) Dr. Amakiri noted full range of motion, without any abnormal movements. (R:645) Specifically, he noted Plaintiff's lumbar range of motion to be 60 degrees flexion without pain, 35 degrees extension without pain, 35 degrees left side bend without pain, 30 degrees right side bend without pain, and 45 degrees left and right rotation without pain. (*Id*.) The Commissioner argues that Dr. Amakiri's observation of full range of motion shows that the limited spinal motion criterion was not met. (Doc. 18:4) Although the ALJ accorded little weight to Dr. Amakiri's report, there are no other records during the relevant time period indicating limited spinal motion.

       4.       *Motor Loss (atrophy with associated muscle weakness or muscle weakness) Accompanied by Sensory and Reflex Loss*

Plaintiff argues that the record reflects motor loss accompanied by sensory or reflex loss. (Doc. 17:6) In June 2006, Plaintiff complained of numbness to his left leg. (R:491) In July 2006, Plaintiff experienced numbness to his left foot, in August he experienced numbness to his leg, and in September 2006, Plaintiff experienced numbness to his left buttocks and leg. (R:254, 257, 263) An April 2007 medical record indicated Plaintiff was experiencing lower back pain and numbness to his left leg. (R:244) Plaintiff fails to acknowledge, however, that all of these notations in the record report Plaintiff's own allegations. The regulations require that the physical findings be based on objective observation and not merely on the subjective reports by the Plaintiff. *See* Listing 1.00D.

A May 31, 2007, physical examination showed "neuro intact with slightly diminished left ehl and achilles reflex, left." (R:238)  An August 2007 medical record indicated that Plaintiff experienced decreased muscle strength of 4/5 due to pain.  (R:228)  On October 17, 2007, Plaintiff was found to have reduced muscle strength.  (R:382)  These records fail to reflect motor loss accompanied by sensory and reflex loss on any given evaluation, much less an ongoing record of such combination.

Further, examination on January 11, 2008, reflected normal sensation, intact reflexes, and intact motor strength.  (R:376)  This is consistent with Dr. Amakiri's observations in September 2010, finding "symmetric strength, and normal muscle tone without any atrophy or abnormal movements."  (R:645)  Again, although the ALJ accorded Dr. Amakiri's report little weight, there are no other records during the relevant time period indicating a combination of motor loss and sensory and reflex loss.

5.      Straight Leg Raising Test

The medical records indicate that Plaintiff had positive straight-leg raising tests on the left leg in July 31, 2006; September 25, 2006; September 12, 2007; October 17, 2007; and January 22, 2008.  (R:254, 263, 376, 382, 402) In September 20, 2010, examination reflected positive results for the straight leg test on both left and right legs.  (R:645)   There were also intermittent negative results.  (*See* e.g. R:228 (August 17, 2007))  As the ALJ noted, none of the records indicate whether the test was performed and positive both sitting and supine, as required by the Listing.   (R:24; Listing 1.00D, 1.04A) Again, there was no record of ongoing

management and evaluation from the alleged onset date to demonstrate that the positive finding

in September 2010 was not an intermittent abnormal finding.  *See* Listing 1.00D.

To the extent, if any, the ALJ erred by not providing a more detailed analysis as to why

the records to which Plaintiff points do not satisfy the criteria for Listing 1.04A, for any and all

of the reasons set forth above, any such error is harmless.   There is substantial evidence to

support the ALJ's determination that Plaintiff had failed to meet his burden to demonstrate that

his impairment met all of the criteria for Listing 1.04A.   Plaintiff's claim for relief on this

ground is denied.

**V.      Whether the ALJ incorporated all of Plaintiff's limitations into the hypothetical
         question to the vocational expert**

Plaintiff claims that the vocational expert's testimony cannot constitute substantial

evidence supporting the ALJ's determinations at steps four and five because the ALJ failed in

her hypothetical question to the vocational expert to incorporate all of Plaintiff's limitations as

stated in the ALJ's decision, which Plaintiff contends were more limiting.  (Doc. 17:7-10)  In

order to provide substantial evidence for an ALJ's finding of non-disability, the vocational

expert's testimony must be based on a hypothetical question that includes all limitations

supported by the record and found by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431, 435-436 (5th

Cir. 1994).   The Commissioner contends that the ALJ's hypothetical question did contain all of

the limitations found by the ALJ.  (Doc. 18:5-7)

The ALJ asked the vocational expert to assume a hypothetical individual within the same

age category, educational profile, and work history and to:

assume that this person is limited to the full range of basic sedentary work. Additionally, he cannot climb, kneel, squat, crouch, or crawl.   He can occasionally bend and stoop.  From a mental standpoint, he can understand, carry out, and remember simple, but due to concentration problems, not complex or detailed instructions.  And, use judgement to make simple work-related decisions.

(R:51-52)

In her written decision, the ALJ found that Plaintiff has the RFC:

to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a).   Thus, claimant has the residual functional capacity to lift no more than 10 pounds at a time, occasionally lift and carry small articles such as docket files, ledgers, and small tools, sit for up to six hours during an eight-hour workday, and walk and stand intermittently for up to two hours during the eight-hour workday. However, claimant cannot kneel, squat, crouch, crawl, or climb stairs, ramps, ladders, ropes, and scaffolds. He can only occasionally bend and stoop.  Nevertheless, claimant can understand, remember, and carry out simple, but not complex or detailed, instructions; and use judgment to make simple, work-related decisions.

(R:22-23)

Plaintiff argues that the ALJ's hypothetical question omitted Plaintiff's limitations of being able to only occasionally lift-carry small articles, sit for up to six hours, and walk and stand intermittently for up to two hours.  (Doc. 17:9)  Plaintiff is correct that the ALJ did not state these limitations verbatim in her hypothetical question.  However, such limitations were encompassed in the hypothetical question, subsumed by the phrase "limited to the full range of basic sedentary work."  (*See* R:51)

Sedentary work, as defined in the regulations:

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if

15

walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.  The terms in this definition are further elaborated in Social Security Ruling (SSR) 83-10:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251 at *5.

Thus, the ALJ's statement that Plaintiff is limited to being able to only occasionally lift-carry small articles, sit for up to six hours, and walk and stand intermittently for up to two hours, was merely a restating of the finding that Plaintiff has the RFC to perform the full range of basic sedentary work as defined in 20 C.F.R. § 404.1567(a).  Whereas the vocational expert, to whom the hypothetical question was directed, would be presumed to know the definition of sedentary work, the Plaintiff, to whom the ALJ's decision was directed, would not.

The ALJ's hypothetical question to the vocational expert contained all of the limitations found by the ALJ to be supported by the record.  Thus, the vocational expert's testimony constitutes substantial evidence on which the ALJ could rely in making her findings at steps four and five.  Plaintiff's claim for relief on this ground is denied.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff is not entitled to relief on any of the grounds presented.  The ALJ's decision is not the result of legal error and is supported by substantial evidence.  The Commissioner's decision is, therefore, **AFFIRMED**.

**SIGNED** and **ENTERED** on March 21, 2013.

_____

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

17